IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| IVESCO HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>PROFESSIONAL VETERINARY PRODUCTS, LTD;  PROCONN, LLC,<br><br>    Defendants. | No. 1:09-cv-00052<br><br>**COMPLAINT**<br>**(Demand For Jury Trial)** |

COMES NOW Plaintiff IVESCO Holdings, LLC ("IVESCO") pursuant to Federal Rule of Civil Procedure 3, and for its claims for relief against Defendants Professional Veterinary Products, LTD ("PVPL") and ProConn, LLC ("ProConn"), states and alleges as follows:

**THE PARTIES**

1.     IVESCO is a privately held limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Iowa Falls, Iowa. IVESCO is a wholly owned subsidiary of AHN International LLC, a Delaware company in the business of providing veterinary products and services.  IVESCO distributes animal health products to swine and other livestock feedlot owners, producers and veterinarians.

2.     PVPL is a corporation organized and existing under the laws of the State of Nebraska with its principal place of business in Omaha, Nebraska.  PVPL is a distributor of animal health products which does business in Douglas County, Nebraska.  PVPL is the sole member of ProConn, a Nebraska limited liability company engaged in the sale and marketing of

3. products and services for food animal owners and veterinarians serving the food animal health industry.  ProConn does business in Douglas County, Nebraska.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1332(a)(1) in that IVESCO and PVPL/ProConn are citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) and (a)(2) for the reason that this is a civil action wherein jurisdiction is founded only on diversity of citizenship and is brought in a judicial district in which PVPL and ProConn reside.  PVPL and ProConn shall hereinafter collectively be referred to as "PVPL."

## INTRODUCTION

6. IVESCO's swine product business ("IVESCO Swine Business") was commercially ambushed and left for dead by PVPL on March 24, 2009.  On that date, IVESCO former employees ("Former IVESCO Employees"), including IVESCO's former Regional Manager of Integrator-Swine Ted J. Scholfield ("Scholfield"), acting pursuant to a highly organized and preconceived plan, executed a commercially fatal attack upon IVESCO in an attempt to take over, steal and destroy the IVESCO Swine Business.  On that date, a majority of the IVESCO Swine Business unit employees, after most had systematically deleted all information and data from their IVESCO computers, *literally* stood up from their desks and promptly walked out of IVESCO's offices, leaving computers running, telephones ringing and IVESCO work abandoned.  The IVESCO Swine Business was left in shambles.

7. Before March 24, 2009, PVPL had never before been engaged in the swine product business.  PVPL knew, however, IVESCO commanded more than forty percent (40%) of

the market share of this business in the United States. Before PVPL's action, the IVESCO Swine Business was IVESCO's most important business unit, with sales of more than $80 Million. On March 24, 2009, it was decimated. At the same time, PVPL's never-before swine business was launched and immediately has become thriving, having been built on false and self-serving misrepresentations made by Former IVESCO Employees to IVESCO customers, vendors and other employees *prior to March 24, 2009* for the benefit of PVPL that IVESCO was "leaving the swine product business." Fueled by this false and malicious campaign, PVPL's swine business has come alive overnight and is now rapidly challenging to replace IVESCO as the swine product business leader in the marketplace. The preliminary preparation and promptness by which PVPL took over the IVESCO Swine Business fully demonstrates the well-organized and preconceived plan to destroy, or at a minimum unlawfully compete with, IVESCO through a conspiracy of unfair competition and tortious interference. IVESCO has been irreparably and, indeed, devastatingly, harmed and crippled by such unlawful conduct. IVESCO seeks full recompense from PVPL in damages as well as equitable relief.

## STATEMENT OF FACTS

**A.   Background**

8.   IVESCO is divided into divisions, including veterinary services, dealer retail sales and those devoted to supplying products for specific types of livestock. IVESCO has long focused on customer service and adding value to its customers. It has successfully done so for nearly a half century.

9.   In or about December 2007, IVESCO acquired the IVESCO Swine Business from a third party, JT Kruse. As of March 24, 2009, IVESCO valued the IVESCO Swine Business at approximately $80 Million and held more than a forty percent (40%) market share of the swine

product business. Most of the IVESCO Swine Business is located in the Midwest, predominately in Nebraska, Iowa, South Dakota and Illinois. Mostly comprised of large corporate customers, the IVESCO Swine Business is connected in part to biological manufacturer contracts with IVESCO customers, many of which are long time valued partners with IVESCO.

10. PVPL is a direct competitor of IVESCO in the veterinary products business, in the areas of cattle, horses, and small animals. Prior to March 24, 2009, PVPL was not in the swine product business. Acting pursuant to a preconceived plan executed through certain Former IVESCO Employees, PVPL misappropriated for itself the goodwill of the IVESCO Swine Business. Upon information and belief, certain of the Former IVESCO Employees made improper contacts with IVESCO customers, vendors and other IVESCO employees prior to March 24, 2009, falsely claiming IVESCO was "leaving the swine product business."

**B.   PVPL's Unlawful Raid on the IVESCO Swine Business Unit**

11. Beginning on March 18, 2009, but in a major wave occurring on or immediately prior to March 24, 2009, more than one dozen Former IVESCO Employees, including Scholfield, resigned from IVESCO in an abrupt and coordinated fashion. Upon information and belief, in all, eighteen Former IVESCO Employees, which comprised a supermajority of the IVESCO Swine Business unit, left the employment of IVESCO and were, or immediately became, re-employed by PVPL.

12. In the morning of Tuesday, March 24, 2009, after two Former IVESCO Employees had resigned, IVESCO became suspicious about a potential mass exodus of IVESCO employees. Twice that day, Richard Burton ("Burton"), Vice President of Sales, asked Scholfield whether a group of employees were planning to leave the IVESCO Swine Business.

Twice Scholfield stated he had not heard anyone would be leaving IVESCO. Later that day when Burton informed Scholfield he planned to immediately begin tracking employee communications to determine if the rumor was true, Scholfield again denied hearing the rumor. Despite his denial, a short time later on the same day, in a third conversation, Scholfield abruptly resigned, communicating his resignation to Burton on the phone and via e-mail. As the day proceeded, fifteen other Former IVESCO Employees immediately resigned without notice, after most had purged their IVESCO computers of their activities. On Wednesday, March 25, 2009, a final Former IVESCO Employee resigned after being assured by PVPL it would assume any legal cost associated with IVESCO's expected legal action against PVPL.

13. The Former IVESCO Employees did not want IVESCO to know about their discussions with each other and PVPL regarding their intentions for stealing IVESCO's swine business. Upon information and belief, Scholfield, other Former IVESCO Employees and PVPL secretly developed a plan to give IVESCO a false sense of security concerning their future plans for the Former IVESCO Employees to abruptly resign from IVESCO and immediately transfer their employment and the IVESCO Swine Business to PVPL.

**C.    PVPL's Unfair Competition and False Statements**

14. After March 24, 2009, IVESCO learned that since at least January 2009, Scholfield began contacting competitors of IVESCO in an attempt to negotiate a deal in which he would "move" the IVESCO Swine Business to a competitor. To cover up his tracks and be able to solicit participation from other IVESCO employees at the same time, upon information and belief, Scholfield and/or other Former IVESCO Employees, for the benefit of PVPL, spread rumors and false innuendo to manufacturers, suppliers, customers and IVESCO employees that IVESCO intended to terminate its participation in the IVESCO Swine Business.

15. After March 24, 2009, IVESCO learned that in or about mid-February 2009, upon information and belief, Scholfield began negotiations with PVPL. Upon information and belief, at or about the same time, IVESCO learned PVPL contacted Behringer Harvard, an investment bank frequently used by participants in the veterinary products industry as a credit facility, in connection with a purchase order for $2.0-$3.0 Million in swine products, even though it was well known PVPL was not in the swine products business at the time.

16. In the veterinary products industry, customers often make contracts with product vendors, in which they specify the suppliers to be used. Prior to March 24, 2009, IVESCO was universally regarded as the primary supplier in ten of the industry's top twelve swine customer contracts, and the secondary supplier in the two remaining contracts. Upon information and belief, acting at the behest and for the benefit of PVPL, Former IVESCO Employees informed IVESCO vendors that IVESCO would no longer be in the swine products business in the future. As a result, some IVESCO vendors thereafter requested their customers' contracts be changed from IVESCO to PVPL.

17. Upon information and belief, prior to and since March 24, 2009, Former IVESCO Employees have made numerous false statements to IVESCO customers, vendors and manufacturers claiming IVESCO intended to leave the swine products industry. Acting for the benefit of PVPL, certain Former IVESCO Employees, including Scholfield, while still employed by IVESCO, solicited IVESCO employees on PVPL's behalf to join PVPL on the basis that PVPL was planning to enter the swine products business while IVESCO would be leaving the industry. As a direct and proximate result of conspiracy and tortious conduct involving PVPL and certain Former IVESCO Employees, IVESCO's customer, vendor and employee relationships, goodwill and loyalty have been severely and irreparably harmed.

## FIRST CLAIM FOR RELIEF
### (Civil Conspiracy – Unfair Competition)

18. IVESCO realleges and incorporates herein by this reference Paragraphs 1 through 17 of this Complaint.

19. PVPL and Former IVESCO Employees have acted with mutual mental action coupled with intent to commit the acts which resulted in injury to IVESCO.

20. PVPL and Former IVESCO Employees have engaged in a combination to accomplish by concerted action an unlawful or oppressive object, i.e. take over or steal the IVESCO Swine Business or, alternatively, a lawful object by unlawful or oppressive means, i.e. a preconceived plan to take over or steal the IVESCO Swine Business.

21. PVPL induced Former IVESCO Employees to commit actionable wrongs in violation of their duties of loyalty while employed by IVESCO. Upon information and belief, PVPL, among other things, induced one or more Former IVESCO Employees while they were still employed by IVESCO to solicit employees of IVESCO to work for PVPL and to secretly and abruptly leave IVESCO in order to steal or take over the IVESCO Swine Business or, at a minimum, to directly compete with IVESCO in the swine products market. PVPL's preliminary preparation and the promptness by which PVPL took over the IVESCO Swine Business demonstrate PVPL's preconceived plan.

22. PVPL's unlawful conduct caused damage to IVESCO including, but not limited to, destroying goodwill in the IVESCO Swine Business in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference with Business Expectancies)

23. IVESCO realleges and incorporates herein by this reference Paragraphs 1 through 22 of this Complaint.

24. IVESCO has valuable business relationships and expectancies with its customers in the swine products business and had a valid expectation the business relationship would continue.

25. PVPL had knowledge of the valid business relationships and expectancies between IVESCO and its customers.

26. There was, and upon information and belief there continues to be, an unjustified and intentional act of interference on the part of PVPL in (i) making false statements to IVESCO's customers that IVESCO intends to voluntarily leave the swine products business; (ii) inducing IVESCO employees to leave IVESCO in a coordinated and abrupt fashion and immediately begin working for PVPL; (iii) inducing IVESCO employees to make contact with IVESCO customers on behalf of PVPL immediately prior to leaving IVESCO in an attempt to interfere with IVESCO's business relationships and/or expectancies with such customers (iv) inducing one or more Former IVESCO Employees, while they were still employed by IVESCO, to solicit other IVESCO employees to work for PVPL and (v) inducing the Former IVESCO Employees to breach their duty of loyalty to IVESCO by, among other things, promising to indemnify them.

27. There is proof that the interference of PVPL has caused the harm sustained by IVESCO.

28. IVESCO has suffered damages as a proximate result of PVPL's tortious interference with IVESCO's business relationships and expectancies in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, IVESCO prays for judgment against PVPL, and each of them, under each of the First and Second Claim for Relief, as follows:

(i) Damages in an amount to be proven at trial;

(ii) Imposition of a constructive trust upon PVPL and/or accounting relating to its conspiracy and tortious conduct;

(iii) Prejudgment and post judgment interest;

(iv) Punitive damages;

(v) Costs and reasonable attorneys' fees as permitted by law; and

(vi) Such other and further relief as the Court deems just or equitable or allowed by the pleadings.

## PLACE OF TRIAL

IVESCO requests place of trial at Cedar Rapids.

Dated this 7th day of April, 2009.

IVESCO HOLDINGS, LLC, Plaintiff


By:/s Kathryn E. Jones
Kathryn E. Jones #17224
Marcia A. Washkuhn #20009
Bartholomew L. McLeay (application for admission pro hac vice forthcoming)
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148
kate.jones@kutakrock.com
marcia.washkuhn@kutakrock.com