IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| IVESCO HOLDINGS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>PROFESSIONAL VETERINARY<br>PRODUCTS, LTD; PROCONN, LLC,<br><br>Defendants. | No. C09-0052<br><br>RULING ON MOTION TO COMPEL |

On the 15th day of January 2010, this matter came on for hearing on the Motion to Compel (docket number 50) filed by the Plaintiff on December 17, 2009. Plaintiff IVESCO Holdings, LLC was represented by its attorney, Kathryn E. Jones. Defendants Professional Veterinary Products, Ltd. and Proconn, LLC were represented by their attorney, Steven D. Davidson.

### *I. BACKGROUND FACTS AND PROCEEDINGS*

On April 7, 2009, Plaintiff filed a Complaint (docket number 2) seeking money damages from Defendants. Plaintiff colorfully alleges that its swine product business "was commercially ambushed and left for dead" by Defendants' wrongful conduct. Plaintiff claimed entitlement to recover on theories of "civil conspiracy-unfair competition" and "tortious interference with business expectancies." Defendants admit that "certain at-will IVESCO employees who had no contractual obligations regarding future competition" left their employment at Plaintiff and were hired by Defendants. Defendants deny the material allegations by Plaintiff and further deny that Plaintiff is entitled to any relief.

1

On October 16, 2009, Plaintiff amended its complaint by redesignating its first claim as "civil conspiracy-tortious interference." Plaintiff added a second claim for "aiding and abetting" Plaintiff's former employees in committing "the wrong of breaching their fiduciary duties and tortiously interfering in IVESCO's business expectancies." Plaintiff's third claim was modified to allege "tortious interference with business expectancies and employee relationships." Finally, a fourth claim was added to assert "unjust enrichment."

A jury trial is scheduled before Chief Judge Linda R. Reade on May 17, 2010, with a final pretrial conference scheduled on April 8, 2010. On January 11, 2010, Defendants filed a Motion for Partial Summary Judgment (docket number 54), asking that the Court summarily deny Plaintiff's claim for punitive damages. That motion is pending.

## II. DISCUSSION

On December 17, 2009, Plaintiff filed the instant motion to compel. Plaintiff asks the Court to compel additional discovery in four areas: First, Plaintiff seeks information regarding communications by Defendants to Plaintiff's customers or suppliers during a two-week period from March 24, 2009 (when a number of employees quit the Plaintiff and joined the Defendants) to April 7, 2009 (when Plaintiff filed the instant action). Second, Plaintiff seeks information regarding Defendants' "reduction in force" and wage freezes during 2008 and 2009. Third, Plaintiff seeks documents regarding a prior potential merger or acquisition between the parties. Fourth, Plaintiff challenges Defendants' claims of privilege in refusing to produce relevant documents.

### A. *Communications Between March 24, 2009 and April 7, 2009*

In its First Amended Complaint, Plaintiff alleges that Defendants' swine business has

> been built on false and self-serving misrepresentations made by Former IVESCO Employees to IVESCO customers, vendors and other employees *prior to March 24, 2009* for the benefit of PVPL that IVESCO was "leaving the swine product business".

2

*See* First Amended Complaint at 3 (docket number 46 at 3) (emphasis in original). In its motion to compel, Plaintiff asserts that Defendants continued to make "false and injurious claims" to third parties during the two weeks after the employees left Plaintiff and joined Defendants.

In interrogatory number 8, Plaintiff asks Defendants to identify each person whom Defendants "solicited, attempted to solicit or discuss the prospect of PVP or PROCONN working with or providing goods or services to at any time since July 1, 2008 to the present." Similarly, requests for production numbers 15 and 16 seek documents relating to contacts between Defendants, or the "departed employees," and any current or former customer, manufacturer, vendor or supplier of Plaintiff. Request number 17 seeks documents relating to "the employment or anticipated employment of any of the DEPARTED EMPLOYEES." Noting that the parties are active competitors, Defendants objected to the discovery requests as irrelevant, overbroad in time and scope, and unduly burdensome. Notwithstanding the objections, Defendants agreed to produce documents "regarding the listed entities created prior to the date the Departed Employees began work at PVP and/or ProConn."

Plaintiff subsequently agreed that the requested discovery would be limited to the two-week period from March 24, 2009, to April 7, 2009. Defendants subsequently agreed that the production would include all of Plaintiff's customers, rather than the limited list set forth in the request for production of documents. *See* Exhibit F attached to Declaration of Marcia A. Washkuhn (docket number 50-8). At the time of hearing, Defendants' counsel represented to the Court that all documents have been produced in compliance with the parties' agreement. Mr. Davidson was uncertain that Defendants had provided Plaintiff with a written statement of compliance in so many words, but advised the Court that he was willing to do so. The Court directs counsel to do so.

Responding to Plaintiff's interrogatory – requesting information regarding all contacts, including oral communications – is somewhat more problematic. Mr. Davidson

3

could not state whether Defendants maintained any call logs, computer entries, notes, or other information which may reflect telephone calls or other contacts which fall within the parameters of the parties' agreement. If Defendants have any information regarding oral communications which fall within the scope of discovery described in Exhibit F, then they must provide Plaintiff with that information. If Defendants have no information regarding oral communications meeting the discovery criteria, then they must advise Plaintiff of that fact in so many words.

### B. *Defendants' "Reduction in Force" and Wage Freezes*

Next, Plaintiff asks that Defendants provide it with information regarding reductions in force (RIFs) and wage freezes during 2008 and 2009. *See* Request for Production Number 42. Defendants object to the request as irrelevant and overly broad. Nonetheless, according to a footnote contained in Plaintiff's brief, Defendants' president testified in his deposition regarding a RIF, terminations and layoffs between July 2008 and March 2009, and reductions in employee wages and benefits in 2008 and 2009.

Plaintiff argues that the requested information is relevant to the issue of why its employees left Plaintiff and joined Defendants. Plaintiff believes that Defendants will claim that the employees left as a result of Plaintiff's RIF and employment actions. Plaintiff argues, however, that Defendants' "own employment actions, which were allegedly fully disclosed to the Departed Employees, strongly suggest that they did not leave IVESCO for those reasons." Defendants agree that "[t]he reason for the employees' decision to leave IVESCO is directly relevant, and IVESCO's layoffs, wage freezes, and failure to pay promised bonuses are obviously at issue." Defendants argue, however, that whether they had "similar events in the years preceding the employees' decision to resign makes no difference."

Defendants note that Plaintiff obtained at least some of the requested information during the deposition of Defendants' president. In addition, Defendants agreed in their response to the motion to compel "to produce a summary document that identifies and

4

describes the scope and extent of any salary and/or bonus freeze or reduction in force at PVP during 2008 or 2009." The Court concludes that the summary document proposed by Defendants, together with the prior testimony of Defendants' president, provides Plaintiff with sufficient information on this issue.

### C. Documents Regarding Prior Potential Acquisition

Apparently, Plaintiff previously attempted to acquire Defendants. According to Plaintiff, Defendants' president was blamed by Defendants' employees for "killing" the deal. Plaintiff believes that Defendants' president "initiat[ed] a counterattack on IVESCO a few months later in the form of stealing the valuable IVESCO Swine Business." Plaintiff seeks all documents which in any way relate to the potential merger or acquisition. *See* Requests for Production numbers 52, 53, and 54. Defendants respond that the requests are irrelevant, overly broad, and unduly burdensome.

The Court agrees with Defendants. Presumably, there are thousands of documents which potentially fall within the requested discovery. The vast majority of the documents have no relevance to the issues in dispute here. Much of the information is already in the possession of Plaintiff. The Court concludes that Plaintiff's motion to compel production of these documents should be denied.

### D. Claims of Privilege

In responding to Plaintiff's discovery requests, Defendants withheld certain documents, claiming attorney-client privilege and/or attorney work product privilege.[1] In its instant motion to compel, Plaintiff challenges Defendants' claim of attorney-client privilege regarding some of these documents. In response to the Court's request, Defendants have provided copies of the disputed documents for *in camera* inspection by the Court.

---

[1] Defendants' privilege log was attached to the Declaration of Marcia A. Washkuhn as Exhibit J (*see* docket number 50-12).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* In a diversity case, such as the instant action, the determination of whether the attorney-client privilege applies is governed by state law. *Union County, Iowa v. Piper Jaffray & Co., Inc.*, 425 F.3d 643, 646 (8th Cir. 2008). The attorney-client privilege in Iowa "is of ancient origin" and is codified in Iowa Code Section 622.10. *Bailey v. Chicago, B. & Q.R. Co.*, 179 N.W.2d 560, 563 (Iowa 1970). The attorney-client privilege "is premised on a recognition of the inherent right of every person to consult with legal counsel and secure the benefit of his advice free from any fear of disclosure." *Id.*

There are 15 documents in dispute.[2] The 15 disputed documents may be described as follows:

| ITEM NO. | BATES NO. | DESCRIPTION |
|---|---|---|
| 1. | 00001 | E-mail from Steve Price to Board of Directors, dated August 30, 2008, with copy to Rick Putnam |
| 2. | 00002-03 | E-mail from Don Janezic to Price and Board of Directors, dated August 31, 2008, with a copy to counsel |
| 3. | 00099-100 | E-mail from Steve Price to Board of Directors and counsel, dated October 4, 2008 |

---

[2] As noted by Defendants in their response to the instant motion, some of the documents identified by Plaintiff in its motion are actually duplicates of other documents. Bates-stamped document PVP04323 is duplicated at PVP06275. Bates-stamped document PVP07847 is duplicated in document numbers PVP07845, 07850, 07962, 07967, 08247, 08559, 08563, 08567, and 09555.

| ITEM NO. | BATES NO. | DESCRIPTION |
|---|---|---|
| 4. | 00280-346 | E-mail from Steve Price to Board of Directors and counsel, dated January 2, 2009, regarding upcoming board meeting, together with attachments |
| 5. | 00408-409 | E-mail from Steve Price to Executive Management Team and counsel, dated March 30, 2009, with attachment |
| 6. | 00415 | E-mail from Ted Scholfield to Steve Price, dated April 4, 2009, regarding letter received from Plaintiff's counsel |
| 7. | 00416 | E-mail from Steve Price to Proconn employees, dated April 6, 2009, regarding letter received from Plaintiff's counsel |
| 8. | 00417 | Memo from Jamie Meadows to Steve Price, dated April 3, 2009, regarding conference call |
| 9. | 00418 | E-mail from Ted Scholfield to other employees, dated April 7, 2009, regarding contact with counsel |
| 10. | 00419 | E-mail from Steve Price to identified persons, including counsel, dated October 6, 2008, regarding litigation |
| 11. | 04318 | Minutes of Barracuda meeting, dated March 30, 2009 |
| 12. | 04323 | Minutes of Barracuda meeting, dated March 17, 2009 |
| 13. | 07847 | E-mail from Lisa Naive to Jamie Meadows, dated April 6, 2009, regarding Swine team |
| 14. | 10072 | Barracuda notes, dated April 6 |
| 15. | 10073 | Barracuda conference call, dated April 7 |

Item 1 is a communication from Defendants' president to its board of directors and outside counsel. As noted by Defendants in their response to the instant motion, it states that "Rick is researching legal options." However, that is the only reference to litigation found on the document. It does not discuss what "legal options" Rick was researching, nor does it seek any legal advice. The Court concludes that it is not protected by the attorney-client privilege.

7

On the other hand, item 2 discusses a potential legal argument and, as indicated by Defendants in their brief, asks "if that is a doctrine, Rick?" (referring to counsel). Because the communication seeks legal advice, it falls within the attorney-client privilege.

Item 3 updates the board of directors regarding employee resignations, but does not discuss litigation, nor does it seek legal advice. It is not protected by the attorney-client privilege.

Item 4 provides the board of directors with documents relating to the upcoming meeting. One of the attachments addresses ProConn and discusses the substance of conversations which Steve Price had with Rick Putnam and others. The Court concludes that it is protected by the attorney-client privilege.

Item 5 seeks input from the executive management team and counsel regarding a draft letter to shareholders. The Court concludes that it falls within the protections of the attorney-client privilege.

According to Defendants' response to the motion to compel, items 6-9 and 11-15 were previously produced to Plaintiff, with specific references to counsel redacted. The Court has reviewed the redacted and unredacted copies of the documents and concludes that Defendants have fairly produced the relevant non-privileged material.

Item 10 is an e-mail from Steve Price to the board of directors, informing them that suit had been filed against three former ProConn managers and that "Rick Putnam will take the lead in answering your questions regarding the lawsuits." The Court concludes that the document is factual in nature, does not discuss the actual litigation, and does not seek legal advice. Accordingly, the Court finds that it is not protected by the attorney-client privilege.

In summary, the Court concludes that Defendants are required to produce items 1, 3, and 10 above.

*ORDER*

IT IS THEREFORE ORDERED that the Motion to Compel (docket number 50) filed by the Plaintiff is hereby **GRANTED** in part and hereby **DENIED** in part as set forth above.

DATED this 22nd day of January, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA