# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| IVESCO HOLDINGS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>PROFESSIONAL VETERINARY<br>PRODUCTS, LTD and PROCONN,<br>LLC,<br><br>    Defendants. | No. 09-CV-52-LRR<br><br>**ORDER** |

_____

## *TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*  *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*   *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.*   *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *1.*    *IVESCO* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *2.*    *PVP & ProConn* . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B.*   *PVP Recruits IVESCO's Employees* . . . . . . . . . . . . . . . . . . . . *5*
    *C.*   *The Departure* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*VI.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *A.*   *Choice of Law Principles* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.*   *Existence of a Conflict* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *C.*   *"Most Significant Relationship" Analysis* . . . . . . . . . . . . . . *10*
        *1.*    *Section 145(2) Contacts* . . . . . . . . . . . . . . . . . . . *10*
            *a.*   *Place of injury* . . . . . . . . . . . . . . . . . . . *10*
            *b.*   *Place of conduct causing the injury* . . . . . . *13*
            *c.*   *Domicile and place of business of the parties* . . . . *14*
            *d.*   *Relationship of the parties* . . . . . . . . . . . . . . . . *15*

|   |    | e. | Summary | 16 |
|---|----|----|---------|----|
|   | 2. | *Section 6 Factors* | | 16 |
|   | 3. | *Summary* | | 19 |
| VII. | CONCLUSION | | | 19 |

## I. INTRODUCTION

The matter before the court is the "Motion for Partial Summary Judgment" ("Motion") (docket no. 54), filed by Defendants Professional Veterinary Products, Ltd. and ProConn, LLC (collectively, "PVP").

## II. PROCEDURAL BACKGROUND

On April 7, 2009, Plaintiff IVESCO Holdings, LLC ("IVESCO") filed a Complaint (docket no. 2). In the Complaint, IVESCO asserted claims against PVP for civil conspiracy and tortious interference with business expectancies. On April 30, 2009, PVP filed an Answer (docket no. 11), in which it denied the substance of the Complaint and asserted various affirmative defenses.

On October 16, 2009, IVESCO filed an Amended Complaint (docket no. 46). In the Amended Complaint, IVESCO maintains its claims for civil conspiracy and tortious interference with business expectancies, and asserts additional claims for aiding and abetting and unjust enrichment. On October 28, 2009, PVP filed an Answer (docket no. 47) to the Amended Complaint.

On January 11, 2010, PVP filed the Motion. On February 4, 2010, IVESCO filed a Resistance (docket no. 59). On February 26, 2010, PVP filed a Reply (docket no. 64).

Neither side requests oral argument on the Motion. The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332

("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States"). IVESCO is a citizen of Iowa. PVP is citizen of Nebraska. The court is satisfied that subject matter jurisdiction exists.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "[T]o establish the existence of a genuine issue of material fact, 'a plaintiff may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Rather, the nonmoving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has

successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the facts in the light most favorable to the non-moving party, IVESCO, and affording it all reasonable inferences, the undisputed facts are as follows:

### A. Parties

#### 1. IVESCO

IVESCO is a Delaware limited liability company with its principal place of business in Iowa Falls, Iowa. IVESCO distributes animal health products to swine and other livestock feedlot owners, producers and veterinarians. Its business consists of several divisions, including veterinary services, dealer retail sales and "those devoted to supplying products for specific types of livestock." Amended Complaint at ¶ 7. One of IVESCO's divisions is its swine product business ("IVESCO Swine Business"). "The majority of IVESCO's swine product customers are located in the upper Midwest, with approximately 40% in Iowa, 20% in Minnesota, 20% in Illinois, and the remaining 20% among other states." IVESCO's Statement of Facts (docket no. 59-2), at ¶ 26.

Most of IVESCO's "centralized functions" occur at its facility in Iowa Falls. *Id.* at ¶ 12. IVESCO's "human resource functions, including hiring, firing, administration

4

of benefits, insurance and paid time off, and all payroll administration, are performed in Iowa Falls." *Id.* at ¶ 13. IVESCO's controller and credit manager "oversee more than half of IVESCO's finance functions from Iowa Falls, including financial planning and reporting, accounting, bill payment, budget management, credit management, debt financing, and debt collection." *Id.* at ¶ 14. IVESCO manages all of its purchasing from Iowa Falls. IVESCO maintains branch facilities in multiple states, including Arkansas, Florida, Georgia, Illinois, Minnesota, North Carolina, Texas, Virginia and Wisconsin.

### 2. *PVP & ProConn*

Professional Veterinary Products, Ltd. is a Nebraska corporation with its principal place of business in Omaha, Nebraska. ProConn, LLC is a Nebraska limited liability company and is wholly owned by PVP. ProConn's principal place of business is also in Omaha. PVP engages in the distribution of animal health products throughout the United States. PVP and IVESCO are "active competitors." PVP's Statement of Material Facts (docket no. 54-2) at ¶ 4.

## B. *PVP Recruits IVESCO's Employees*

In early February of 2009, PVP's sales manager, Chris Baker, attempted to recruit Monica Porter for a sales position in Kentucky. Porter, who is unrelated to either party, declined PVP's offer. However, she informed Baker that her friend, Lisa Naive, might be interested in a position with PVP. At the time, Naive was a sales person for IVESCO. Baker obtained Naive's resume and called her on the telephone.

On February 18, 2009, Baker and Naive met at a Cracker Barrel restaurant in Corydan, Indiana, to discuss a sales position with PVP. During their meeting, Naive told Baker that other IVESCO employees might be interested in employment with PVP, and asked Baker if he would like to speak with them. Baker said yes, and they scheduled a meeting.

On February 20, 2009, Baker met with Naive and two other IVESCO sales persons,

5

Doug Springer and Carl Nolan, in Champaign, Illinois, to discuss employment opportunities at PVP. On March 3, 2009, Baker and PVP's President, Steve Price, met with IVESCO employees Doug Springer, Carl Nolan and Ted Scholfield in Peoria, Illinois, to discuss employment with PVP.

PVP subsequently invited five IVESCO sales employees—Lisa Naive, Doug Springer, Carl Nolan, Ted Scholfield and Brad Kelley—to PVP's Omaha headquarters. On March 14, 2009, the five IVESCO employees met in Omaha and "toured [PVP's] facility, learned about the company and asked questions about potential employment." *Id.* at ¶ 10.

On March 16, 2009, Price met IVESCO employees Ted Scholfield and Michael Banks at the Ickey Nickel Bar & Grill in Sioux City, Iowa. Price told Banks that "he had an opportunity to get a group of people to come work for PVP, he offered [Banks] a tour of PVP facilities and he gave Banks a booklet of information about PVP." IVESCO's Statement of Material Facts at ¶ 6. That same date, Price met with IVESCO employees Brad Kelley and Tom Dougan at a Perkins restaurant in Minnesota.

On March 19, 2009, several PVP representatives, including Baker and Price, met with a group of eight IVESCO employees—Ted Scholfield, John Bilgri, Bob Allen, Erin Elmore, Sarah Jesse, Christine Moore, Daphne Reddy and Kent Watson—in Quincy, Illinois to discuss employment opportunities at PVP. On March 21, 2009, IVESCO employees Tom Dunning, Stan Schultze and Dave Meyer toured PVP's Omaha headquarters.

PVP later sent letters containing offers of employment to interested IVESCO employees from its Omaha headquarters. The employees who accepted the offers returned executed letters to PVP's Omaha office.

### C. The Departure

On March 24, 2009, numerous IVESCO employees terminated their employment

with IVESCO. Subsequently, eighteen former IVESCO employees—most of whom worked in the IVESCO Swine Business—accepted employment at PVP. IVESCO alleges that this was the culmination of a "highly organized and preconceived plan . . . to take over, steal and destroy the IVESCO Swine Business." Amended Complaint at ¶ 5. According to IVESCO, its Swine Business "was left in shambles" due to a "commercially fatal attack" at the hands of PVP.[1] *Id.*

The employees that left IVESCO to work for PVP reside in several states, including Illinois, Arkansas, Minnesota, Iowa, North Dakota, Missouri and Kentucky. Their sales territory included several of these states, as well as Wisconsin, Oklahoma, Michigan, Ohio, Tennessee, Pennsylvania, Colorado, Indiana and South Dakota. PVP hired the former IVESCO employees to work in the same geographic locations in which they lived and worked while employed at IVESCO. The former IVESCO employees "had specialized knowledge regarding the IVESCO customers [they] served, particularly with respect to specific products regularly sold and important customer contact information." IVESCO's Statement of Facts at ¶ 18.

## VI. ANALYSIS

In the Motion, PVP asks the court to grant summary judgment on IVESCO's claim for punitive damages. PVP contends that Nebraska law governs the issue and Nebraska law prohibits punitive damages. IVESCO argues that Iowa law governs its punitive damages claim and allows it to recover punitive damages.

### A. *Choice of Law Principles*

The parties agree that, because Iowa is the forum state, its choice of law rules govern the court's determination of the applicable substantive law. *Alumbaugh v. Union*

---

[1] According to IVESCO, PVP President Steve Price referred to PVP's recruitment of IVESCO employees with the "code name" "Project Barracuda" or "Barracuda Project." Resistance at 9. However, IVESCO sets forth no evidence that supports this assertion.

*Pac. R.R. Co.*, 322 F.3d 520, 523 (8th Cir. 2003) (citing *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994)). "[T]he Iowa Supreme Court has repeatedly turned to the Restatement in analyzing choice of law issues." *Washburn v. Soper*, 319 F.3d 338, 342 (8th Cir. 2003). The Iowa Supreme Court "now follow[s] the [Restatement (Second) Conflict of Laws (1971) ("Restatement")]'s 'most significant relationship' methodology for choice of law issues." *Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). "The theory behind this approach is that rather than focusing on a single factor, 'the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation.'" *Id.* at 897 (quoting *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968)). The "most significant relationship test" is found in § 145 of the Restatement and provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 145; *see also id.* § 148(1). In turn, § 6 of the Restatement provides:

> (1) A court, subject to constitutional restrictions, will

> follow a statutory directive of its own state on choice of law.
>
> (2) Where there is no such directive, the factors relevant to the choice of the applicable rule of law include:
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic principles underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Id.* at § 6.

### B. Existence of a Conflict

"'[B]efore entangling itself in messy issues of conflict of laws[,] a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.'" *Phillips v. Marist Soc. of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996) (quoting *Barron v. Ford Motor Co. of Can., Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992)). Thus, the court first considers whether an actual conflict exists between Iowa and Nebraska law on the issue of punitive damages.

Nebraska law prohibits punitive damages on constitutional grounds. *See Abel v. Conover*, 104 N.W.2d 684, 690 (Neb. 1960) (holding that "penalties in favor of private persons are prohibited by the [Nebraska] Constitution"); *Miller v. Kingsley*, 230 N.W.2d 472, 474 (Neb. 1975) ("It is a fundamental rule of law in this state that punitive, vindictive, or exemplary damages are not allowed. The measure of recovery in all civil cases is compensation for the injury sustained.") (citing *Abel*, 104 N.W.2d 684); *Exxon*

9

*Shipping Co. v. Baker*, 128 S.Ct. 2605, (2008) ("Nebraska bars punitive damages entirely, on state constitutional grounds."). Iowa law, in contrast, permits punitive damages in civil cases. *See* Iowa Code § 668A.1 (setting forth standards for an award of "punitive or exemplary damages"); *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 203 (Iowa 1994) ("Current Iowa law holds that an award of punitive damages does not depend on an award of compensatory damages, but rather depends on a showing of actual damages.") The court is satisfied that a conflict exists between Iowa and Nebraska law with respect to the availability of punitive damages. Accordingly, the court turns to weigh the relevant considerations set forth in the Restatement.

### C. *"Most Significant Relationship" Analysis*

First, the court examines the contacts set forth in Restatement § 145. Then, the court turns to consider the § 6 factors.

#### 1. *Section 145(2) contacts*

##### a. *Place of injury*

The parties dispute where IVESCO's alleged injury occurred and how much weight the court should give this factor. PVP argues that, because the former IVESCO employees reside in various states with sales territories spread across a wide geographic area, IVESCO incurred its injury from lost sales in those "remote" locations—not at IVESCO's principal place of business in Iowa. PVP's Brief in Support of Motion ("PVP Brief") (docket no. 54-1), at 7. IVESCO contends that the effect of its pecuniary losses was felt most severely at its principal place of business in Iowa Falls, where the bulk of its operations occur.

Most of IVESCO's centralized functions occur at its Iowa location. "[M]ore than half of IVESCO's finance functions [operate] from Iowa Falls, including financial planning and reporting, accounting, bill payment, budget management, credit management, debt financing, and debt collection." IVESCO's Statement of Facts at ¶ 14. IVESCO also

10

conducts its purchasing from Iowa. Accordingly, IVESCO will feel the ultimate financial effects of PVP's allegedly tortious conduct most severely in Iowa. *See* Restatement § 145 cmt. f (stating that, in analogous cases of unfair competition, "[t]he effect of the loss, which is pecuniary in nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business"); *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 864 (N.D. Ill. 2002) (applying "most significant relationship" test and holding that "the alleged place of injury is Illinois because [the plaintiff's] principal place of business and state of incorporation is Illinois and the economic impact of the tortious interference will be felt in Illinois."); *see also Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 528 (7th Cir. 1981) ("The harm that [the plaintiff] suffered and for which it seeks to be compensated was purely economic and as such was sustained in Illinois, where [the plaintiff's] principal place of business is located[.]"); *cf. Sheldon v. Tara Khanal*, No. 07-2112-KHV, 2007 WL 4233628, at *7 n.7 (D. Kan. Nov. 29, 2007) (applying *lex loci delicti* doctrine and concluding that plaintiff's home state was the place of injury because that is where plaintiff "felt the financial consequences" of defendant's tortious interference). The court finds that any injuries IVESCO suffered from PVP's allegedly tortious conduct will be felt primarily in Iowa and therefore the place of injury is Iowa.

Although IVESCO's alleged injury occurred in Iowa, the court finds that this factor is entitled to little weight in the instant analysis. The Restatement clarifies the place of injury analysis with respect to the analogous torts of unfair competition and misappropriation of trade values:

> [T]he place of injury is less significant in the case of fraudulent misrepresentations and of such unfair competition as consists of false advertising and the misappropriation of trade values. *The injury suffered through false advertising is the loss of customers or of trade. Such customers or trade will frequently be lost in two or more states.* The effect of the loss, which is

> pecuniary in nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business. *But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade*.
>
> * * *
>
> For all these reasons, the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts. *Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values*.

Restatement § 145 cmt. f (emphasis added).

This reasoning is equally applicable in the instant action, because the primary injury is pecuniary loss that resulted from lost customers and sales in multiple locations. The place of injury, Iowa, has "only a slight relationship to [PVP's] activities and to [IVESCO's] loss of customers or trade." *Id*. In these circumstances, the place of injury contact is entitled to little weight. *See Integral Resources (PVT) v. Istil Group, Inc.*, 155 F. App'x. 69, 73 (3d Cir. 2005) ("Therefore, injury would be felt in both countries, and thus the importance of the place of injury factor is diluted. The harm factor's site is of lesser significance in tortious interference with contractual relations cases.") (citing Restatement § 145, cmt. f); *Good Earth Lighting, Inc. v. New Chao Feng Indus. Co., Ltd.*, No. 98 C 1442, 1999 WL 58555, at *3 (N.D. Ill. Feb. 3, 1999) (giving "little weight" to place of injury contact because the alleged injury due to misappropriation of trade secrets involved the sale of goods "across the United States") (citing Restatement § 145, cmt. f); *Vhora v. Michelin North Am., Inc.*, No. 98 C 2657, 1999 WL 63682, at *4 (N.D. Ill. Feb. 4, 1999) ("Where the injury complained of is pecuniary in nature, the place where the injury occurred becomes less important in determining which state has the most significant relationship.") (citing *Stavrioh's v. Litwin*, 710 F. Supp. 216 (N.D. Ill. 1988)).

Accordingly, the court gives little weight to the place of injury contact in its choice of law analysis.

### b. Place of conduct causing the injury

PVP argues that this contact "strongly supports" the application of Nebraska law, because it conducted its recruiting efforts from Nebraska and most of its meetings with the former IVESCO employees occurred in states other than Iowa. PVP Brief at 7. IVESCO argues that this contact does not favor the application of Nebraska law, because PVP's recruiting efforts occurred in multiple states, and only two meetings with the former IVESCO employees occurred in Nebraska.[2]

PVP's recruiting efforts consisted of eight in-person meetings in four states—three in Illinois, one in Indiana, one in Minnesota, one in Iowa and two in Nebraska. PVP's conduct in Iowa was limited to one meeting in Sioux City with two IVESCO employees, Michael Banks and Ted Scholfield. Ultimately, only Scholfield left IVESCO to work for PVP. Banks declined PVP's offer. PVP's conduct in Indiana and Minnesota was likewise limited—the single Indiana meeting included one IVESCO employee and the Minnesota meeting included just two IVESCO employees. The two meetings at PVP's Omaha headquarters, in contrast, included eight IVESCO employees, all of whom eventually left IVESCO to work for PVP. The Omaha meetings also appear to have played a larger role in PVP's allegedly tortious conduct. It was at those meetings that former IVESCO employees "toured [PVP's] facility, learned about the company and asked questions about potential employment." PVP's Statement of Material Facts at ¶ 10. PVP also sent offer letters to the former IVESCO employees from its Omaha headquarters and the employees returned the executed letters to Omaha. The court finds that Nebraska was the "principal location" of PVP's conduct. Restatement § 145 cmt. f. This contact favors the application

---

[2] IVESCO does not argue that the place of conduct supports the application of Iowa law. Rather, it appears to argue that this contact is neutral.

of Nebraska law.[3]

As previously noted, the place of injury contact is generally given less weight in similar cases of unfair competition, because the injury—lost customers and sales—often occurs in multiple states. Restatement § 145, cmt. f. Although the ultimate pecuniary effect of tortious interference may be felt most acutely at the principal place of business, "this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade." *Id.* For these reasons, "*the principal location of the defendant's conduct is the contact that will usually be given the greatest weight* in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values." *Id.* (emphasis added).

The court finds this reasoning applicable in the instant action. Iowa has only a slight relationship to PVP's conduct. Most of the former IVESCO employees resided outside of Iowa and only four worked at an IVESCO branch in Iowa. Only four of the former IVESCO employees had a sales territory that included Iowa. Thus, most of IVESCO's lost customers or trade will occur in states other than Iowa. Accordingly, the court finds that the place of conduct factor is entitled to significant weight in the choice of law analysis.

    *c.*    *Domicile and place of business of the parties*

PVP argues that this contact weighs in favor of Nebraska law. Specifically, PVP contends that IVESCO's Delaware incorporation and "decentralized" structure constitute a "rejection" of Iowa law. PVP Brief at 8. PVP cites no legal authority for this

---

[3] The only other state with any significant connection to the allegedly tortious conduct is Illinois, where PVP representatives met with former IVESCO employees on three occasions. However, these meetings appear to have played a much less significant role in PVP's recruitment than its conduct in Nebraska. The Nebraska meetings were more comprehensive in nature. In any event, much more of PVP's conduct occurred in Nebraska than Iowa.

proposition. PVP's argument also overemphasizes the importance of IVESCO's state of incorporation. "[A] corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place." Restatement § 145, cmt. e. IVESCO does no swine product business in Delaware. Accordingly, IVESCO's principal place of business, Iowa, is a more important contact than its place of incorporation. *Id.* PVP also does not dispute that IVESCO's principal place of business is in Iowa or that most of IVESCO's "centralized functions" occur in Iowa Falls. IVESCO's Statement of Facts at ¶ 12.

In any event, the court finds that this factor is neutral in the instant action. IVESCO is a Delaware corporation with its principal place of business in Iowa. PVP is a Nebraska corporation with its principal place of business in Nebraska. "[T]he importance of [the domicile and place of business] contacts depends largely upon the extent to which they are grouped with other contacts." Restatement § 145, cmt. e. "The fact . . . that one of the parties is domiciled or does business in a given state will usually carry little weight of itself." *Id*. In the instant action, the conduct causing injury contact favors Nebraska law. The place of injury contact favors Iowa law. Because this contact is not significantly grouped with other contacts to either state, the court finds that this factor is neutral.

### d. *Relationship of the parties*

The parties agree that this factor is not applicable to the instant analysis, because "[t]here was no preexisting relationship between the parties relevant to this dispute, by contract or otherwise." Resistance at 8. The Restatement contemplates that this factor may not always be a relevant consideration. *See* Restatement § 145(2)(d) (stating that one contact to consider is "the place where the relationship, *if any*, between the parties is centered") (emphasis added). Accordingly, the court affords this contact no weight in its choice of law analysis.

### *e.* *Summary*

The place of injury contact supports the application of Iowa law to IVESCO's punitive damages claim. However, this contact is entitled to little weight in the instant action due to the nature of IVESCO's alleged injuries and the tortious conduct alleged. The place of the conduct causing injury is Nebraska and strongly supports the application of Nebraska law. The remaining two contacts are neutral.

### *2.* *Section 6 factors*

In addressing the § 6 factors, the parties focus primarily on the relevant policies of the forum and other interested states. PVP argues that Nebraska's "strong policy" against the imposition of punitive damages "outweighs any Iowa interest concerning a non-resident defendant, and compels the application of Nebraska law in this case." PVP Brief at 8-9. Unsurprisingly, IVESCO contends that Iowa's policy of allowing punitive damages outweighs Nebraska's prohibition on punitive damages.

Iowa law allows punitive damages "as punishment and as a deterrent to the wrongdoer and others." *Lala v. Peoples Bank & Trust Co.*, 420 N.W.2d 804, 807 (Iowa 1988). Nebraska, on the other hand, bars punitive damages to protect its citizens from oppressive risk of liability and to encourage entrepreneurial activity. *See Fanselow v. Rice*, 213 F. Supp. 2d 1077, 1085 (D. Neb. 2002) (discussing policies behind prohibition of punitive damages).

IVESCO argues that application of Nebraska law to its punitive damages claim would mean that "PVP and every other Nebraska corporation would be immunized from accountability for their actions causing injury to citizens of Iowa." Resistance at 15. On the other hand, IVESCO claims that the application of Iowa law "'would further [Iowa's] interest in protecting its citizens, through deterrence, because the financial penalty would emphasize the importance the state places on safety and corporate responsibility through its policy.'" *Id.* (quoting *Dodson v. Ford Motor Co.*, C.A. No. PC 96-1331, 2006 WL

16

2642199, at *5 (R.I. Super. Ct. Sept. 5, 2006)).

The application of Nebraska law to IVESCO's punitive damages claim would not "immunize" all Nebraska corporations for injuries they cause to Iowa citizens. The application of Nebraska law would merely bar punitive damages against PVP in this case, where almost all of the allegedly tortious conduct occurred outside of Iowa. The deterrent purpose of Iowa's punitive damages rule would not be served by applying Iowa law to conduct that occurred almost entirely outside of Iowa. A PVP representative only entered Iowa on one occasion to meet with two IVESCO employees, one of whom ultimately left IVESCO to work for PVP. All other meetings, including two at PVP's Nebraska headquarters, occurred in states other than Iowa. PVP presumably planned and coordinated its recruitment efforts from its corporate headquarters in Nebraska. PVP ultimately made employment offers from Nebraska. Nothing indicates that PVP targeted IVESCO or its employees because its principal place of business is in Iowa or certain employees worked in Iowa.

The court finds that the application of Iowa law to IVESCO's punitive damages claim would not further the deterrent purpose of Iowa's punitive damages policy, because the conduct at issue occurred almost entirely outside of Iowa. Similarly, the court finds that the punishment rationale of punitive damages is unpersuasive when the purpose would be to punish a party for conduct that occurred mostly outside of Iowa. *See* § 145, cmt. c ("When the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance."). The purpose of punitive damages in Iowa is unquestionably to deter and punish. PVP's conduct was distributed across several states. PVP's conduct in Nebraska was clearly more predominant than its limited contact with Iowa. Accordingly, the court finds that the relevant policies and interests of Iowa and Nebraska support the application of Nebraska law to IVESCO's

punitive damages claim.[4]

The protection of the parties' justified expectations and the predictability of results also supports the application of Nebraska law. IVESCO argues that PVP could not expect Nebraska law to apply "in a case where an Iowa-based corporation is injured on the ground that PVP is headquartered in Nebraska." Resistance at 17. Again, IVESCO argues that "[i]f Nebraska law were to apply uniformly to any company with its principal place of business in the state, Nebraska could effectively impose its policy against punitive damages on the rest of the country." Id. This argument would have more force if there were no other connections to Nebraska in this case. While PVP is incorporated in and operates out of Nebraska, other factors—particularly the extent of PVP's conduct in Nebraska as opposed to Iowa—weigh heavily in favor of Nebraska law. PVP directed its allegedly tortious conduct mostly to states other than Iowa. As between Iowa and Nebraska, it is clear that PVP's conduct occurred primarily in Nebraska and that PVP would justifiably expect to be subject to Nebraska law for its actions.[5]

IVESCO also argues that "[e]ase in the determination and application of the law also weighs against the application of Nebraska law in a court siting in Iowa[.]" Id. at n.7. The court finds that this factor is of little importance in the instant action. The issue is simply whether IVESCO can recover punitive damages or not. "No esoteric or complex substantive laws are involved." Veasley, 553 N.W.2d at 898.

---

[4] For the same reasons, "the basic principles underlying the particular field of law" support the application of Nebraska law. Restatement § 6(2)(e). In light of their deterrence and punishment purposes, the applicable law as to punitive damages should naturally focus on the place of the defendant's conduct. Id. at § 145, cmt. c ("When the primary purpose of the tort rule involved *is to deter or punish* misconduct, *the place where the conduct occurred has peculiar significance*.") (emphasis added).

[5] The court also notes that, according to IVESCO's argument, Iowa's punitive damages rule would potentially apply in any case where the plaintiff happens to be an Iowa citizen—even if virtually all of the conduct giving rise to the claim occurred in other states.

The remaining § 6 factor, the needs of the interstate and international systems, recognizes that "[c]hoice-of-law rules . . . should seek to further harmonious relations between states and to facilitate commercial intercourse between them." Restatement § 6, cmt. d. The instant action involves a Nebraska defendant that engaged in allegedly tortious conduct in Nebraska and several other states, with very minimal conduct in Iowa. The application of Nebraska law to IVESCO's punitive damages claim does not upset the needs of the interstate system.

### *3. Summary*

The court finds that the relevant § 145(2) contacts favor the application of Nebraska law. Due to the nature of the alleged tortious conduct and IVESCO's alleged injuries, the most important contact is the place where the conduct causing injury occurred. Iowa has an insignificant connection to the allegedly tortious conduct, while much of it occurred in Nebraska. The relevant § 6 factors also support the application of Nebraska law to IVESCO's punitive damages claim. Accordingly, the court shall grant the Motion and apply Nebraska law to IVESCO's claim for punitive damages.

### VII. CONCLUSION

In light of the foregoing, the Motion (docket no. 54) is **GRANTED**.

**IT IS SO ORDERED.**

**DATED** this 17th day of March, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA